Reynolds *v.* The Mayor, &c. of Albany.

———o-o-o———

ALBANY SPECIAL TERM, May, 1850.     *Wright,* Justice.

REYNOLDS *vs.* THE MAYOR, &c. OF THE CITY OF ALBANY, and C. W. BENDER.

Where a municipal corporation, having power to provide furniture for the room of the common council, at the public expense, orders the portrait of a governor of this state to be procured, as an article of furniture for such room, and votes an appropriation from the public funds, to pay for the same, this is not such a transcending of power, or unjustifiable abuse of authority, as to justify the interference of the courts, by injunction, upon the complaint of a tax payer.

MOTION to dissolve an order in the nature of an injunction. In the month of March, 1850, the plaintiff commenced an action against the defendants, and obtained from a judge, *ex*

*parte,* an order in the nature of an injunction, restraining the defendants and each and every of them, their officers and agents, from in any way appropriating or paying out any money, funds or property belonging to the corporation of the city of Albany, for the purchase of a picture or portrait of Governor Fish, pursuant to a resolution adopted by the common council of such city on the 18th of March, 1850.

The complaint of the plaintiff stated, that he was a resident and tax payer of the city of Albany; and that he commenced the action in behalf of himself and such other persons interested as might join therein, " for the purpose of having the power of the common council of the city to appropriate money for certain purposes legally tested and defined ;" that he was informed and believed that on the 18th of March, 1850, at a meeting of the common council, a resolution was passed by a two-third vote, in substance as follows : *Resolved,* That the City Hall committee be and they are hereby directed to procure a portrait of Governor Fish, at an expense not to exceed $250 ; and that the following resolution was offered and rejected by a similar vote :

" *Resolved,* That the common council have no power legally to appropriate and apply funds of the city to the purchase of pictures, or procuring portraits of governors or other persons, and that the chamberlain be and he is hereby directed not to pay out of the city funds any money for such purposes." That Christopher W. Bender was the chamberlain, having the general care and superintendance of the city funds, and the receipt and disbursement thereof, under the direction of the common council, and that in the discharge of his duty, unless restrained, he would immediately pay the said sum of $250, out of the city funds, for the portrait or picture mentioned in the resolution. That the mayor, aldermen and commonalty of the city, as such corporation, were indebted in about the sum of $700,000, which largely exceeded the value of all the property owned by the corporation, and that the greater part of the money annually expended by the corporation, for all purposes, was raised by direct taxation upon property situated and owned in said city. That the plaintiff was advised and believed that the mayor,

aldermen and commonalty had no power or authority legally to appropriate any money under their control to the purpose contemplated in said resolution, or for any similar purposes; and that the alienation and expenditure of money belonging to the city of Albany, for the purpose of paying for such picture, was foreign to the lawful business and objects of such corporation.

The motion to dissolve the injunction was made upon the complaint, and upon affidavits on the part of the defendants. The affidavits substantially stated that it had been the custom of the city for nearly forty years past, to procure the portraits of the governors of the state and hang them in the common council room of the city, as part of the furniture thereof; and that the portrait of Governor Fish was directed to be procured for that purpose. That in pursuance of that custom there were now hanging in the common council room of the city, as a part of its furniture, portraits of governors George Clinton, John Jay, Morgan Lewis, Daniel D. Tompkins, De Witt Clinton, Joseph C. Yates, Martin Van Buren, Enos T. Throop, William L. Marcy, William H. Seward, William C. Bouck, Silas Wright and John Young.

*Isaac Edwards* and *N. Hill, Jr.* for the defendants.

*M. T. Reynolds*, plaintiff, in person.

WRIGHT, J.   As between the corporators and tax payers of the city of Albany, and the common council and chamberlain, the latter are the agents of the former, in the disbursement of the corporate funds.   There is a novel question therefore in the case, whether, on the application of a corporator and tax payer, and upon the allegation that the agent has transcended or abused his agency or power, or is about to do so, this court is to be invoked and its power exercised to restrain such agent in the disbursement of the corporate funds.   It seems to me very apparent that if the exercise of such power is to be upheld and encouraged, there will be business enough in this particular de-

partment of duty to engross almost exclusively the labors of the judiciary. Any municipal expenditure or disbursement might be attacked by a citizen, and the court, in each case, before the expenditure shall be incurred, or the disbursement made, be asked to pass judicially upon the question, whether the agent is transcending or abusing his authority. The agents or officers of a municipal corporation exist at the will of the members of such corporation; and if such officers abuse the trust confided to them, in the disbursement of the public funds, the remedy is at hand. The aid of the court is not needed, unless, indeed, they have negligently elected or appointed agents or officers to act in their behalf, who may abuse their trust before the remedy can be applied. This may be so in any case where the relation of principal and agent exists.

But it is not, perhaps, necessary in the decision of this motion to fully examine this point. Assuming that the question is properly raised, I am of the opinion that the common council did not transcend their powers in ordering the portrait to be procured, and voting an appropriation from the public funds to pay for the same. It was directed to be procured as an article of furniture for the room in the City Hall, in which the common council meet to transact the public business. The power of the common council to *furnish* the room in which they shall meet for the transaction of public business, is conceded by the plaintiff. But it is urged, that the furniture thus provided should be of a character exclusively suited to promote the comfort, convenience and necessities of the council while discharging their public duties; that it should be useful rather than ornamental; that pictures are not appropriate and necessary furniture for such a room. And that when the council expend the public money to procure portraits of even the governors of this state, to adorn its walls, they transcend their powers, or at least it is an abuse of power.

Conceding that the common council may provide fit and proper furniture, at the public expense, for the room in which they meet, they are of course to exercise a reasonable discretion in doing so. What amounts to a reasonable discretion is to be

---

---

determined by the circumstances of the case.  There might be cases in which that discretion was so grossly abused, to the injury of tax payers, as to call for judicial interposition; but in my judgment that is not this case.  If the common council may provide furniture, it may be such as is appropriate and usual for such a room.  They may go farther than actual necessity or physical comfort and convenience require, so long as their action does not involve an inappropriate, unusual, prodigal and wasteful expenditure of the public means.

The room for which the portrait in question is designed, as an article of furniture, is the ordinary place of meeting of a public body, having limited legislative powers over a community of fifty thousand people.  There is no complaint that the common council has exceeded its authority in furnishing such room, at the public expense, for the public convenience, benefit and advantage, save in hanging upon its walls the portraits of the eminent men of the state, who since the foundation of the government have, in succession, exercised its chief executive power.  The power to *furnish* the room is undenied.  Is the procuring of these portraits such an abuse of that power, as upon the complaint of a tax payer, to call upon the court to interfere?  I think not; but on the contrary, if the room is to contain any more furniture than that absolutely required for the physical comfort and convenience of those periodically engaged in the public business, what more fit and appropriate—what more usual—in rooms of this character, than the portraits of our distinguished citizens?

This is not like the case of *Hodges* v. *The City of Buffalo* (2 *Denio*, 110,) where the public funds were sought to be used to pay for an entertainment and ball furnished to the citizens and guests of the city of Buffalo.  It is more analogous in principle to the case of *The State of New-York* v. *The City of Buffalo*, (2 *Hill*, 434.)  In the latter case it was held that the corporation, as an incident to an express grant of police powers, might, in the exercise of a sound discretion, contract for and procure 200 stand of arms to preserve the peace and protect the persons and property of its citizens.  In this case, as in the one

under consideration, it might have been urged that although the corporation possessed police powers by express grant, and implied power necessary to carry such grant into effect, yet as 200 stand of arms were not absolutely required to preserve the peace of the city, it was an abuse or an usurpation of power. But the court thought that as the general power conferred upon all corporations in the state, includes that of purchasing and holding such personal estate as the purposes of the body shall require, (1 *R. S.* 602, 2*d ed.*) and as by the charter of the city of Buffalo, the common council had power to make and establish rules and by-laws for the purpose, among other things, of preventing any riot, noise, disturbance, or disorderly assemblages; and also the general power to make police regulations for the good government of the city, the authority was abundant to justify the common council in passing a resolution to procure the arms, and in binding the city by bond or otherwise. In the case under consideration, it is conceded that the purposes of the corporation require the furnishing, in a fit and appropriate manner, a public hall in which the common council shall assemble for the transaction of the public business. The council are to do this at the public expense—the furniture of the hall is the property of the corporation. And when the council choose to hang upon its walls, as an article of furniture, the portrait of a governor of this state, (excessive and abusive as I am inclined to believe the imposition of taxes in cities in many cases is,) I can not conclude that it is such a transcending of power, and unjustifiable abuse of authority as to call for the aid of the courts.

Let there be an order entered to vacate the injunction granted in this case.