[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 432 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 433 
This action is not strictly a creditor's suit to reach the equitable interests and things in action of the debtor, but a suit to reach and subject to the payment of the judgment specific property fraudulently placed beyond the reach of legal process. The plaintiff asks no relief against the property of the debtor which is not the subject of seizure on execution, *Page 434 
but confines his claim to the goods or property actually transferred by the fraudulent assignment, and the seizure and sale of which, under the execution, is prevented solely by the fraudulent and collusive acts of the parties to that instrument.
Before resorting to the equitable powers of the court to compel the satisfaction of a judgment out of the choses in action of the debtor, it is fit and proper that the legal remedy should be exhausted, not only in form, but in reality and in good faith. Hence it was held that the debtor could not be subjected to the costs and annoyance of a creditor's bill, under the statute, until not only an execution against the property of the debtor had been issued to the proper county and been returned unsatisfied, but the return day of the execution had passed. (2 R.S., p. 173, § 138; Cassidy v. Meacham, 3 Paige, 311;Williams v. Hogeboom, 8 Paige, 469; Platt v. Cadwell,
9 id., 386.) It is not denied that a return of an execution is valid, although made before the return day; but the Chancellor, in Cassidy v. Meacham, suggests that it is valid by relation, after the expiration of the time the execution had to run, and adds: "Until the return day, however, it would be the duty of the sheriff to seize and sell any property of the defendants, which could be found within his bailiwick. The execution cannot therefore be considered as legally returned unsatisfied until after the return day." Whether, under the Code of Procedure, the same rule prevails, and the full time allowed for the service and return of an execution must have elapsed, before an action in the nature of a creditor's suit in equity can be brought, will not be considered.
The question, whether the Code had or had not affected the rule established under the Revised Statutes — that the legal remedy was not exhausted until the return day of the execution is passed, and regarding the return day as not arriving until sixty days after the receipt of the execution by the sheriff — was not made upon the trial, and, therefore, is not properly before us upon this appeal. Aside from the doubt growing out of the peculiar position of the appellant, as to his right to interpose the objection that the legal remedy has not *Page 435 
been exhausted so as to entitle the plaintiff to an equitable remedy against the debtor, upon an inspection of the record it will be seen that the question now made was not made in the court below. It is, at least, questionable whether a party interposing a fraudulent claim to shield the property of the debtor from execution and covering all his property, can be heard to object that the legal remedy has not been literally and formally exhausted upon the judgment, the debtor himself taking no exception to the exercise of the equitable powers of the court in enforcing the collection of the judgment. But, passing the consideration of this question, we find it admitted, by the answer of the original defendants, the judgment debtor and his assignee, that the execution was duly issued and returned unsatisfied; and no objection is taken or allegation made that the legal remedy had not been fully and in good faith exhausted. The plaintiff's right to proceed by equitable action against the property and things in action of the debtor, was admitted by the record. The order directing Logan, the receiver, to be made a party to the action, directed it to be done without prejudice to the proceedings already had. He could not, by his answer to the supplemental complaint, change the issue already formed in the action, or withdraw or nullify admissions already made upon the record. His allegation of ignorance of a fact already admitted by the record did not put that fact in issue, as a like averment in the original answer would have done. The only thing that could properly be put in issue by the answer to the supplemental complaint, was the matter showing the transmission of interest from the original party. The new party was bound by the acts and admissions of the original parties, to whose rights he had succeeded. (Story Eq. Pl., § 342; Amer. Life Ins. and Trust Co. v. Sackett, 1 Barb. Ch., 585.) It follows, that all the evidence and exceptions, and all the proceedings upon the trial, concerning the service and return of the execution, were immaterial, and may be regarded as out of the case. But, if issue had been taken upon the allegations in the complaint touching the return of the execution, still the question principally argued upon this appeal was not *Page 436 
taken upon the trial, and is not before us. The objection, and the only objection taken was, that "the execution having been returned by the sheriff seven days after its receipt by him, this action could not be sustained." The question was reserved; and in giving judgment, the judge, in response to this objection, held that the action could be maintained, notwithstanding such return seven days after its delivery. The judge did not decide, and was not called upon to decide, that the full term of sixty days must elapse after the delivery of the execution to the sheriff before the action could be brought, notwithstanding the execution had been sooner returned by the sheriff. That was the point inCassidy v. Meacham; but it was not made here. The bill of exceptions does not show that any evidence was given of the time of the commencement of the action, although the judge has found that it was commenced on or about the 1st day of August, 1856; and the finding is not quite sharp enough to permit us to turn the plaintiff out of court on a point not taken on the trial. On the 2d of August, which is "about the first," the sixty days from the delivery of the execution to the sheriff would have fully expired, and the action might have been commenced within the most rigid rule claimed by the appellant. Had the objection been taken, the plaintiff might have shown the precise day on which this action was commenced; and that it was after the first of August. It is well settled that the return of the execution before the return day does not affect the right of the plaintiff to his equitable remedy founded upon the return. (Williams v.Hogeboom, 8 Paige, 469; Cassidy v. Meacham, supra; Platt v.Cadwell, 9 Paige, 386.)
It is also urged that the return of the sheriff was collusive, and made under the direction of the plaintiff's attorney, and without a bona fide attempt to execute the process. It is a good defence to a creditor's bill to obtain satisfaction of a judgment out of the equitable interests and choses in action of the debtor, that such debtor had property out of which the judgment might have been satisfied in whole or in part, and that the sheriff omitted to levy on such property by collusion with the plaintiff. (Stevens v. Badger, 8 Paige, 130.) Such defence would be *Page 437 
clearly available to the judgment debtor; but whether a fraudulent assignee, who had conspired with the debtor to shield the property from execution, and had, by his false claim, made the process at law ineffectual, could take the same objection, without, at least, alleging that there was property of the debtor, other than that purporting to be assigned, subject to execution, is questionable. But the defence, whether interposed by the debtor or his assignee, or other person claiming under him, is an affirmative defence to be set up in the answer and found upon the trial. Before the Code, and in the Court of Chancery, it was the subject of a plea in bar, and was not available, except when specially pleaded, either by a plea in bar or by proper allegations in the answer. It is a defence which the plaintiff must have an opportunity of meeting and controverting. (Stevens v. Badger, supra; Storrs v. Kelsey, 2 Paige, 418.) No objection was taken in the answer, or upon the trial, to the sufficiency of the complaint; and there is no allegation in either of the answers impeaching the sheriff's return or setting up collusion between the sheriff and the plaintiff, or any omission of duty on the part of the former. Nevertheless, the question was tried in the court below, as if the same was in issue; but the facts found by the judge exonerate the sheriff from all imputation of failure to perform his whole duty, and relieve the plaintiff from the charge of collusion with the sheriff, or of improperly procuring the return of the process without a bona fide attempt to execute it. The request of the plaintiff's attorney to return the execution was made at the suggestion of the sheriff, and after he had made an investigation and learned there was nothing subject to levy unless it was the property which had been assigned, and which is the subject of the controversy in this action, and which the sheriff properly refused to levy upon without indemnity, and gave this information to the attorney. The receiver, now representing the assignee in the fraudulent trust, cannot insist, as a defence to this return, that the plaintiff should have indemnified the sheriff and contested the validity of the assignment at law in an action of trespass, rather than resort to the more appropriate *Page 438 
equitable action to try the fraud alleged. The mere omission of duty on the part of the sheriff in the collection of the execution would be no bar to the equitable action, even against the debtor. Such omission of duty only constitutes a bar when it is the result of a collusion with the plaintiff. The court will not set aside, or interfere with, the return of an execution, unless there be collusion between the plaintiff and the sheriff, to the prejudice of the debtor. It is the fraudulent act of the plaintiff which vitiates the return of the execution, and deprives him of his equitable action in the nature of a creditor's bill. (Evans v. Parker, 20 Wend., 622; Storrs v.Kelsey, supra; Stevens v. Waddell, 2 Sandf. Ch., 494.) That a return has been made by the sheriff at the request of the plaintiff, does not affect the ulterior proceedings by action, unless the debtor has property which could have been reached by execution. So far from alleging this, the claim and ground of defence to the action was that the debtor had no property which could in any way be subjected to the payment of his debts. The judge has found facts which are inconsistent with the charge of collusion, and in favor of the bona fides of the return of the sheriff.
There was no error in permitting the witness, Robert Waller, the assignee, to give evidence of the receipt by John Waller, in London, of the proceeds of the assigned goods which had been shipped to Australia. The dealings of the parties with the assigned goods after the assignment were relied upon as evidence of the colorable character of that instrument, and were competent as tending to show that the transfer was not actual, but colorable, and in order to delay and hinder creditors. John Waller was received as a preferred creditor, when he was not a creditor, or entitled to participate in the fund; and the complaint charged that remittances from Australia on account of the merchandise sent there for sale had been and were expected to be forwarded to John Waller in London; and the answers of the Wallers admit that such remittances had been made, and alleged that the amounts were held by John Waller, subject to instructions of the assignee. The *Page 439 
objection was that the fact sought to be found transpired when neither the assignee nor assignor was present; which was, clearly, not tenable.
It was not competent for the defendant to prove that there was no agreement, at the time of the assignment, that the assignor should retain possession of the assigned property. The assignment spoke for itself, and must be judged by its terms and in the light of the contemporaneous and subsequent acts of the parties. The use that was made of the assignment, and the acts of the parties under it, must furnish the data to judge of the intent and motives with which it was executed. The assignee cannot give evidence of agreements not contained in the assignment, to uphold it or change its legal effect. In terms, the assignment gave the assignee the right of immediate possession; and whether he exercised that right seasonably, was a fact to be established by evidence like other facts, and not by evidence of what the parties to the instrument privately agreed should or should not be done.
The inquiry as to the nature, object and intent of the party in making the assignment, was competent. In Seymour v. Wilson
(14 N.Y., 56), it was held, upon the issue of fraud, competent to inquire of the assignee whether, in making the assignment, it was intended to delay or defraud creditors; and this in support of the assignment, and to repel the charge of fraud. In Griffin v.Marquant (21 N.Y., 121), testimony by the assignor that he made the assignment for the purpose of gaining time to pay his creditors and to protect his indorsers, was held proper evidence as tending to prove a fraudulent intent, although not conclusive. The attempt here, by the questions objected to by the receiver, was to prove by the assignor that his intent in making the assignment was to prevent sacrifice of his property. The evidence was clearly competent within both of the cases decided by this court (supra).
The question of fact was well decided by the court below upon the evidence; and the judgment cannot be disturbed, but should be affirmed, with costs. *Page 440