PEREGO (BIRDSALL v.). See Case No. 1,-435.

---

## Case No. 10,976.

### PEREGO et al. v. BONESTEEL et al.

#### [5 Biss. 66.] [1]

Circuit Court, D. Wisconsin. Aug. Term, 1860.

CREDITORS' BILL—CONFLICTING CLAIMS—PROPERTY SUBSEQUENTLY ATTACHED.

After the appointment of a receiver under a creditors' bill another creditor can acquire no rights by levying an attachment upon property of the judgment debtor. Where the court has obtained jurisdiction under a creditors' bill it will protect the creditor in following up his rights.

[This was a bill in equity by John W. Perego and others against John N. Bonesteel. Henry E. Bonesteel, and Joseph Cary, charging a fraudulent assignment.]

MILLER, District Judge. This bill was filed Oct. 11, 1859. The subpœna, with notice of a rule for an injunction, and for the appointment of a receiver, was served on all the defendants on the 12th of October. An injunction against the two first named defendants was allowed on the 15th of October and was served on the 22d. November 15th an injunction was allowed against Cary, and an order was made and issued for the appointment of a receiver. A receiver was appointed November 21st, who on that day gave his bond. November 23d the bill was amended by making A. J. Langworthy a party defendant. November 25th the answer of Langworthy was filed. In this answer he sets forth that a writ of attachment at the suit of the Farmers' and Millers' Bank against John W. Boonesteel, was placed in his hands on the 15th of November, 1859, which he served by seizing goods as the property of Bonesteel, in the hands of Cary. He does not state the day he seized the goods, but I presume it was the day the writ came to his hands.

The bill is a common judgment creditors' bill upon the return of nulla bona, and also a charge that Bonesteel had made a fraudulent assignment to Cary, which is prayed to be declared null and void.

In Eager v. Price, 2 Paige, 333, 338, a supplemental bill was filed for the purpose of

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

securing a lien on bank stock that came to defendant after filing the original bill, which was sustained. The stock might have been sold under execution. The court say, "The creditors by the bill acquired a specific lien on the property." There is no doubt but the filing of the bill and service of a subpœna gives an equitable lien on property that cannot be seized on execution. In Lansing v. Easton, 7 Paige, 364, the court say: "The ordinary injunction upon a creditors' bill, which only operates upon the defendant, will not, of course, prevent another judgment creditor from levying upon property of the defendant which is the proper subject of a levy, and sale on execution, before the title of the defendant in such property is equitably divested by an order for a sequestration thereof or for the appointment of a receiver." This is an opinion as to the effect of the injunction. In the case of the bill before me, the order for the appointment of a receiver divested the defendant of all interest in the goods liable to execution. By the bill, the complainant acquired an equitable lien thereon, yet, according to the case of Lansing v. Easton, before such order, that lien might not be protected against the legal right obtained to it by another creditor who levied upon it by an execution at law or an attachment. In Storm v. Badger, 8 Paige, 130, the bill was in the usual form of a creditors' bill as to the judgment debtors, and the other defendants were made parties to reach property in their hands belonging to the judgment debtors. And it was alleged that the defendant had property that might have been levied on. The chancellor says: "The object of this suit in this court is to aid the execution at law, and not as a mere substitute of an equitable instead of a legal remedy." The chancellor, in Cuyler v. Moreland, 6 Paige, 273, decides that where the right to file a creditors' bill once exists, by the return of an execution unsatisfied, if the defendant has property which is the subject of sale on execution, but which has been fraudulently assigned, and has other property which can only be reached by a bill, the plaintiff may take out a second execution and levy on property. It is understood, that an order for the appointment of a receiver is equivalent to actual levy. In Ex parte General Assignee [Case No. 5,305], Judge Conkling, in reference to the New York authorities, says that the lien is not created by the filing of the bill alone, but the service of the subpœna is also necessary. He also remarks: "The only case I have met with which seems to militate at all against this doctrine, is that of Lansing v. Easton, 7 Paige, 364. In that case, it is said that a judgment creditor may levy on the property of the defendant, which is the proper subject of levy and sale on execution, before the title of the defendant in such property is divested by an order for the sequestration thereof, or

for the appointment of a receiver. This is a rule of the court of chancery of New York. But there is nothing in this case, properly understood, which conflicts with the other cases. The particular or more appropriate design of the creditors' bill is to enable the creditor to appropriate such property of the debtor as is not liable to seizure by fi. fa., and, as the practice is to require the debtor to assign to the receiver all his property, whether subject to execution or not, it was probably thought but just to other creditors to take care that no unnecessary impediment should be thrown in the way of their ordinary legal remedy;" and it is there decided that the creditors' bill holds the property in preference to proceedings in bankruptcy commenced after the filing of the bill and service of the subpœna. In Storm v. Waddell, 2 Sandf. Ch. Reports, 494, it is decided that if a judgment creditor files his bill and duly prosecutes his suit, he thereby acquires a lien which cannot be impaired by subsequent proceedings in bankruptcy, although no receiver was appointed until after the debtor was declared a bankrupt. It will be observed that on the same day that Langworthy, the sheriff, received and served the writ of attachment by attaching goods in the hands of Cary, an order was made in this court for an injunction against Cary, and also of reference for the appointment of a receiver. These complainants were proceeding to have the property of the defendants in the hands of Cary, who was holding under Bonesteel, appropriated by law to the payment of their debt, which could not be done until the assignment under which Cary held the property should be vacated, which was the object of the bill. The court had taken cognizance of the case before the attachment was placed in Langworthy's hands. In the case of Wiswall v. Sampson, 14 How. [55 U. S.] 52, the receiver was appointed by a decree of the court, but it does not appear that he gave bond for the faithful discharge of his duties. He was considered in possession of the property. And in Booth v. Clark, 17 How. [58 U. S.] 322, a receiver is stated to be an officer of the court, having full power to attend to this business within the jurisdiction without an assignment from the debtor, but not to maintain a suit outside the jurisdiction without such assignment. By the appointment of a receiver the property is in the custody of the court,—the court having acquired jurisdiction of the case by the filing of the bill and the service of process. The great object of this bill was to set aside a fraudulent assignment, and the court had acquired full jurisdiction of it and had awarded an injunction against Bonesteel, the debtor, which was served a month before the sheriff's attachment. I am of the opinion that this bill has the preference over the sheriff's attachment.

[For subsequent proceedings, see Case No. 10,977.]